The next case we'll hear is Brat v. Personhuballah, Louisville, Mississippi, and Mr. Carvin will hear from you whenever you're ready. May it please the Court, Michael Carvin for intervening repellents. I've reserved four minutes for rebuttal. The decision below is obviously wrong and directly contrary to Supreme Court precedent. The Supreme Court ruled unequivocally, established a categorical rule in Zipes that innocent interveners are not liable for attorney's fees unless their arguments are frivolous, and nobody here argues that our arguments were frivolous. Mr. Carvin, you say it's obviously wrong, but my question to you is, just to start off, perhaps you could kind of claim your argument with this in mind. The Supreme Court said at page 763 in Zipes, in every lawsuit in which there is a prevailing Title VII plaintiff, because it was a Title VII case, there will also be a losing defendant who has committed a legal wrong. Now, the interveners were only tagged with legal fees after the state defendants withdrew, isn't that correct? Yes, that's correct. So there was no longer a defendant who had committed a wrong. There was a defendant that committed a wrong that was no longer appealing. It was no longer in the suit. That's precisely the fact. So I'm just wondering whether, when the Supreme Court was considering Zipes, it pretty clearly, by its language, didn't contemplate, it seems to me, the situation we have here. At least arguably, it's not obvious, as you said. Well, I do think it is obvious, Your Honor, because when they said that, the defendant, the one who had committed the legal wrong, TWA, had not only not disagreed with the plaintiffs, they'd entered into a settlement with the plaintiffs. All of the fees at issue with Zipes were solely responsible to the intervening union. The union's interests were not aligned with the defendant at all. They were totally different. The union was representing the people who were not covered, who were not being represented by the plaintiffs, the people who didn't have the maternity issues that were the subject of the settlement. And here we have a situation, it seems to me, is arguably different. I don't know that it is, as a matter of fact, but I don't think it's obvious, as you said, because you have an intervener that is 100% aligned with the defendant. Right. Why does Zipes categorically cover the situation in which the intervener defendant and the state defendant are in 100% alignment? That is, the intervener is aligned with the wrongdoer. Right. And just to make it clear about prolonging the litigation, all of the litigation in Zipes was solely responsible to the interveners. And in that litigation, they were not only defending the collective bargaining agreement. They were saying that 92% of the plaintiffs were entitled to no relief because they had not filed timely EEOC charges. Right. They were third parties, though. The interveners were third parties. They were not in 100% alignment with the defendants. And so my question is to you, why does Zipes necessarily – it seems to me what you're doing is airlifting a sentence out of Zipes when Zipes quite clearly was not contemplating a situation where the defendant and the intervener were in 100% alignment, as is in this case. Well, I think it's important. We're third parties. We're asserting completely different interests than the states, just like the union is. We are not part of the state. We are not susceptible or liable for what they did. Right, but your interests are 100% in alignment. Are they not? If not, why not? Because they were seeking to avoid liability. We were seeking to avoid the remedy. The remedy would have hurt. Neither one of you wanted the districts changed. Your interests and their interests were the same, to keep the congressional district, the racial gerrymander, in existence. Isn't that correct? Which is always true with intervener defendants because intervener defendants, by definition, are defending against the plaintiffs. Right, and that's why I was wondering why Zipes obviously covers the situation. Since intervener defendants are always resisting any relief, just like they resisted any relief in Zipes, then by definition the difference is we have a different interest in the state. The fact that we made the same argument is entirely irrelevant. Indeed, I would think every intervening defendant is making the same argument. They're saying don't change the districts because the state's not liable. What's a blameless intervener? The Supreme Court talks about a blameless intervener. Right, and seven times. How would you define that if you were writing an opinion? What is a blameless intervener? Well, just read Zipes. Seven times it says a blameless intervener is somebody who has not violated anybody's civil rights. We didn't violate anybody's civil rights here. The Commonwealth did. State defendants did. Four times this court has made clear that a blameless intervener is somebody who is not liable on the merits. In Rum Creek, Ohio River Valley, Crescent City, and Johnson, it emphasized the crucial connection between liability on the merits and liability for fees. Okay, but Rum Creek was a different situation, wasn't it? Well, in Rum Creek we were talking about the fee liability of the losing defendant. The intervener wasn't stepping into the seat of the state defendant in Rum Creek. There was factual distinctions there, I acknowledge. Big, big, big alignment. Well, actually, this is a much easier case than Rum Creek, right? Because in Rum Creek they said you couldn't even get fees against the defendant simply because it involved the intervener defendant. Here we're on all fours with Zipes because you can't get fees against the intervening defendant. So this is a much easier case than Rum Creek. And Ohio River, in all of these cases, made it clear that the logic of Zipes was very straightforward. Let me ask you one more question and then I'll cease and desist for a while. So under your theory then, an intervener, a defendant could come in and defend an action for one day. And then a very well-funded intervener could come in and take over the lawsuit. The defendant would drop out and litigate for a matter of years. And under that scenario, the plaintiff would have no right to attorney's fees. Would that be correct? Because the defendant would be gone. So the defendant and the intervener defendant in that situation, I'm not saying it's yours, but in that situation, the intervener defendant and the defendant could essentially get together and force the plaintiff to bear all the costs of litigation, which was clearly not the intent of Congress. Couldn't that happen? I'm trying to look for the unintended consequences of what you're arguing. Well, if you're looking for the unintended consequences, I'll make a point. Yeah, if you can answer that question, couldn't that happen? No. It hasn't happened in the 25 years since Zipes. Well, I'm just saying, why couldn't it happen? If it did happen and there was collusion between the state, where the interveners were coming in solely for the purpose of avoiding fees, I think in those circumstances the court would be free to say that the interveners are essentially the de facto state working for the attorney general. The attorney general in many cases, for example, hire outside attorneys to defend in redistricting cases and the like. And if the collusive scenario you outlined occurred, then presumably they could also say, well, this person is the de facto agent of the attorney general and, therefore, an agent of the state. Now, of course, it's never happened, so we don't know. An attorney general would have to file something saying that I have no basis for defending it, defending this law because it's meritless under his oath as attorney general. I don't think you could do that without committing perjury and simultaneously substitute in an intervening attorney general, an intervening defendant to defend the lawsuit. But to get back to your basic point about whether or not they're making the same argument, virtually all intervening defendants make the same argument, certainly all intervening defendants in Shaw cases like the NAACP, all intervening defendants in affirmative action cases. I could go on and on. They say the claim that this law is unconstitutional is wrong. We are aligning ourselves with the defendants. Their own cases make clear that that is not a disadvantage, that is an advantage. The cases that they cite, for example, Planned Parenthood, distinguished of the Third Circuit case in Thorston because in Thorston they came in and the intervening defendant made the same argument. That's good for the plaintiffs. If the intervening defendant is making a different argument than the defendants, that gives the plaintiffs more work. Therefore, they would have more uncompensated fees. The district court below distinguished Charles on precisely this basis. They said in Charles, the intervener was potentially liable because he was making a separate and distinct argument than the defendant. So under the district court's reasoning, if you make a separate and distinct argument, you're liable. And since we didn't make a separate and distinct argument, we are not liable. Mallory, one of the cases they cited, they point out that after attributing fees to the attorney general, they point out that the National Bar Association, a black lawyers group, had come in and defended the judicial quota. They said they're an example of an innocent intervener because they are a third party distinct from the state, even though the National Bar Association made precisely the same argument as the state. Zipes deals with this issue directly. Let me ask you, though, if I could, Mr. Carman, on this idea of who's blameworthy. Right. You're saying that the fact that you defended an unconstitutional racial gerrymander would never render you blameworthy. Right, because we didn't propagate it. There's a huge difference between violating somebody's right and litigating whether the state has violated their rights. Well, you defended it. You said it was not a racial gerrymander. All intervening defendants defend by definition. That's why they're called defendants. Yet, if you're defending what is later held to be unconstitutional, are you necessarily blameless? Yes, we have to be because otherwise all intervening defendants Oh, no, I think you're being a little circular here. Okay. All right. If the law struck down as unconstitutional, that's the only circumstances in which plaintiffs are entitled to fees. If by having the law struck down unconstitutional means that the people who defended the law are liable for the fees, that necessarily means that all intervening defendants are liable for fees. So you're saying it's absolutely irrelevant if your interests are 100% aligned with the defendant. As long as you're intervening and you weren't the original defendant in the lawsuit, you're home free in sight. I think it's very important. Is that a fair statement? I think it's very important for us. No, no. Could you answer the question? Our interests were not 100% aligned because we had a third party. Why does that make any difference? I thought Sipes was focusing not on the argument being made, focusing on the wrongdoer and saying it said the policy, the general policy that the wrongdoers make whole woes when they have injured under NOR Title VII's aim of deterring employers from engaging in discriminatory practices. That's exactly right. And then they talked about the notion that blameless, and they defined blameless to be the persons who did not commit civil rights. Right. A blameless do not have that policy because they won't extend it to that. And they made it a categorical rule. Rum Creek and other decisions of this court have made it clear that you don't go after fees against intervening defendants because it does not, quote, further the policy of vindicating wrongful discrimination. If we're not wrongdoers, then we don't owe the plaintiffs anything and you don't want to deter us from doing anything wrong because we've never done anything wrong in the first place. Judge Keenan, I want to make sure I understand our semantic dispute. It is utterly irrelevant that we made precisely the same arguments in defense. That's what I needed to know. But that's not suggesting we are aligned with interest. We had an entirely different interest. No, you're saying you didn't commit the wrong. I understand exactly. I'm just trying to push the position to what I think is perhaps a logical problem that you might have down the line. Well, I do want to emphasize that every intervening defendant is seeking to deny the plaintiff's relief. Ninety-eight percent of intervening defendants do that by saying they haven't suffered any legal wrong. That was precisely what happened in Zipes. They were trying to deny any relief to the flight attendants and they were completely aligned with the TWA in that regard. They were saying that. Right. You didn't protect the interests of any third parties. You know, that's what the district court said and I'm befuddled by that notion. We are the third parties. All of these cases talk about there's some state defendants out there that committed the wrong and then there's third parties, people who didn't commit the wrong but are nonetheless interested in maintaining the status quo. So, yes, we, just like the union, are representing ourselves and we benefit from the status quo and we're seeking to resist disruption from the status quo. So, yes, absolutely, just like all intervening defendants, the court below said that. Our interest was personal. It was ensuring our reelection, which is entirely different from avoiding liability. I don't understand why you're making these arguments. I don't think they're relevant to the analysis of Zipes. Zipes, the whole policy consideration is a categorical rule that we're going to assess fees only against the wrong people, only against those who are violating the single rights. Your Honor, if I'm testing your patience, I apologize. No, no, but it's the notion that your interest, I don't think the debate is whether you are arguing the same position or not. It's whether you committed the wrong. That is the absolute categorical rule. That is the absolute dispositive point that if we didn't commit a wrong, we are never liable for fees. All of my discussion about same arguments and third-party interests was in responding to Judge Keenan's point about whether that would make a difference. And I was simply trying to illustrate we know it doesn't make a difference, not only because Zipes was quite unequivocal on this point, because if you look at the facts of Zipes, none of those things distinguish it. They said it about three or four times. They said it three or four different ways. They always linked the idea that the wrongdoer paid penalties. I mean, I've got it underlined here three different places on one single page. The fees and merits go hand in hand. They couldn't have been clearer on this point. I was simply trying to deal with the way the district court tried to distinguish it, which is that somehow we're different if we're prolonging the litigation. The only point I was making was the factual one, was that the interveners in Zipes were prolonging it. Well, if you prolonged it because it was frivolous, unreasonable, without foundation, now we're talking about something different. Short of that. Right. If we're simply exercising our due process rights to make a meritorious argument that affects us in a federal court, that is not blameworthy activity. That is constitutionally protected activity. The other point I make is it only comes up, the issue of intervener's fees only comes up if you prolong the litigation. If the defendants are still defending, then you don't ask whether the intervening defendants are liable because the state defendants are liable, just like they were liable for $900,000 to the plaintiffs as long as they were defending the law. So saying that prolonging the litigation somehow distinguishes Zipes is wrong. Prolonging the litigation is a way to get around Zipes, and you've obliterated Zipes because it only comes up in the situation where the intervener presses ahead and the defendant has abandoned the defense. I want you to know the concept of a wrongdoer is sort of a difficult handle here in terms of voting rights cases because in the voting rights case either the original defenders or the interveners actually passed the law, did they? Well, obviously the original defendants, the people who passed the law can't be sued under legislative immunity, sovereign immunity. Exactly. I'm just wondering, does that put a wrinkle in it or not? No, because it's true in every case. Because in no case can you sue the legislature under Ex Parte Young. The real party and interest is the court has said countless times is the state. The Commonwealth of Virginia is the one who violated plaintiff's rights, not us, the Commonwealth of Virginia. You can't sue the Commonwealth of Virginia. You can't sue the General Assembly. So you sue the people that are implementing the law and therefore violating their civil rights. We're not implementing the law. We're not in any way depriving them of whatever rights they have under the 14th Amendment. So that is not a reasonable distinction. I've run out of time. I guess you have some rebuttals. Yes. Unless they're for you. Why don't I hear from Mr. Elias. Thank you, Your Honor. May it please the court. My name is Mark Elias. I represent the plaintiffs below in the appellees here. I thought I could begin with hopefully a point of agreement between all sides, which is that my clients had their constitutional rights violated. We engaged in protracted litigation that spanned many, many years in order to vindicate those rights. And in the end, the state of Virginia, the map that was drawn by the state of Virginia, which Mr. Carvin's clients claimed credit below for having been an integral part in drawing those maps, in fact claiming that they were allowed to draw their own districts, that map was thrown out as an unconstitutional racial gerrymander. We then asked the court below, as is appropriate, for fees under the fee shifting provision. And as the court below said in their opinion, joint appendix 139, we asked for three things. Number one, we asked for the reinstatement of a fee of about $780,000. That was prior to the entry of judgment in our favor. Number two, we renewed a supplemental motion for $73,000 for fees on remand. Finally, again, this is the court's language. I'm paraphrasing close to the text, though. Plaintiffs requested, this is a direct quote, plaintiffs requested a final supplemental word of $644,648.75, corresponding to their work performed during the remedial phase of litigation and the second appeal to the Supreme Court. Then the court held, in response, defendants and intervener defendants, these gentlemen's clients, challenged the reasonableness of the fee requested and disputed the allocation, if any, of the fee awarded between them. We went to court. We won. The state defended the case. The interveners intervened to defend the case, extended litigation, back up to the Supreme Court. I would note, Your Honors, when it went back up to the Supreme Court, the state of Virginia again took the side of intervener defendants on standing. So on the very issue that we prevailed in the Supreme Court, it was not us versus Mr. Carvin's clients. It was us versus the state of Virginia and Mr. Carvin's clients as to whether or not the congressional delegation had standing. That was the issue on which we ultimately prevailed. We then showed up back in the district court, asked for those three sets of fees, and it was granted. So the one thing that I think is most important from my client's standpoint is that all of this, the efforts by one side or the other to say, it's you, it's you, it's you, it's you, I feel a little bit like a restaurant owner. This is not quite a fair, from my understanding, a fair characterization. It seems to me you start with a proposition the Supreme Court started with, that under the American rule, every party bears its own fees. Then the question is, all right, we have a statute that shifts the fees, and the Supreme Court said it's discretionary, and we're limiting the discretion with categorical rules. They relied on two other cases and established a rule that we're going to only shift those fees in accordance with congressional policy to link it to wrongdoing, the violation of civil rights. They talk about actually violating the committee, no legal wrong, didn't violate civil rights, are blameless, and unless they become blameless for being frivolous, unreasonable, or without foundation, the American rule remains with respect to them. Now, if you do get your fees against the wrongdoer and did get your fees, the question is, in this case, is only whether you get fees for litigating against the interveners, and I don't see anything in Sipes that gives you that relief. Now, I can be persuaded, but I think you need to rely on the case itself that points that out. So, Your Honor, I want to make two arguments. On the fact you didn't expend the money, sure you expended the money. No, Your Honor. The question is whether you bear some of the fees under the American rule. Right. I want to address both. I think you're making two points that I think are critical to this case. The first is what happened in the Supreme Court with respect to the set of fees that were assigned to Mr. Carvin's clients. In that proceeding, we litigated the question of standing against both the intervener defendants and the defendants. The court below would have been perfectly within its discretion to assign all of the fees to the defendants or split the fees between the two. You could have opposed the intervention, too. I mean, these are all fees, but the question is, where did Congress shift the fees to a prevailing plaintiff? The Supreme Court said you have to couple the prevailing plaintiff with the wrongful wrongdoer as an incentive, as part of the relief against the wrongdoer. But the fact that you fought against their position, their position was aligned. They didn't want to have any districts because they were elected from all districts, but they weren't the wrongdoers you were assuming. You were assuming the state. Your Honor, I think what I'm saying here, though, is I was not only fighting the interveners on standing. I was fighting the state on intervener standing. So before we get to the question of Zipes, which I want to address, because I do think the district court below was correct on Zipes, and I want to address that directly. But let me be abundantly clear. We sought relief below. We obtained the relief below. If the intervener defendants are not responsible for those fees, then the state is responsible for their fees because they were in that litigation. That's a different issue. Hold on, hold on. There are two issues as I see it. One is the fees incurred in defending against the interveners. The second is to allocate those fees, whether the plaintiffs have to bear those fees under the American rule or whether they can be shifted to the state. And that's a separate issue in this case, and I guess we'll hear from the state on that issue. Correct, Your Honor, and that's the issue. Before I get to Zipes, I wanted to address that. Maybe I'm taking it in the reverse order.  Correct, Your Honor. That's why I said there are two points I want to make. The first is that point, which is that the state has mischaracterized the procedure below, which is why I read to you from the court's actual decision. They say that the court rejected the idea of joint and several liability. We never sought joint and several liability. We said that there are two parties who are defendants. We have litigated this case. We think they each bear some amount of fees, Your Honor. All we are asking for, though, is the full amount of the award. You may or may not get the full amount. If you are suing the wrong doer, you get the full amount. But what the court below said was defendants and interdictive defendants. It awarded us the full amount and then said there was a dispute between the two of them over the amount. So if ultimately, Your Honor, this court comes to the conclusion that a narrow and I believe overly cramped view of Zipes is appropriate, then the results I hope, and this is my hope, is that this court will not have to do what it would otherwise have to do, which is remand it back to the trial court, have the trial court decide whether or not the wrong doer throughout the standing procedure proceeding in the Supreme Court was, in fact, the state, and therefore they bear the rest of the fees or not. Let me ask you this question on that second issue. Why would the state bear the fees after they were out of the case? They weren't out of the case. Well, they basically weren't going to defend anything. They did. They stood in the U.S. Supreme Court. I understand. But to the very end, that's an allocation question. I'm talking about the fees that were assessed against the interveners. Assume for the hypothetical that those are improperly assessed. So you have roughly $480,000 in fees that were assessed against the interveners. You subtract that from your $1.3 million and you got $900,000. The question is who bears the additional $480,000? Is it your clients have to bear it under the American rule or can you shift that to the state? Some theory, and I'm interested to hear your theory how you can. To me, the theory is quite clear, which is that the state of Virginia argued in the U.S. Supreme Court that their lawsuit, that they had standing to pursue their appeal. And the U.S. Supreme Court disagreed with them 8-0. And so the cost that I bore, that my clients bore in the U.S. Supreme Court to win an 8-0 decision? What's that relevant? I don't understand. But that was the cost. I understand, but every litigant has costs when he litigates. But that's what was shifted, though. Well, it was shifted in this case to the intervener. I'm assuming for my question that that was improperly shifted. Now the question is what do you do with that amount? Right. So I think it was properly shifted. And, again, I wanted to – But if it was not properly shifted, then the state bears it because the state was arguing the same position. It is not true. Why do we have that in front of us today? Excuse me, Your Honor? The allocation between you and the state really isn't in front of us today. The state wasn't allocated expenses for it because the court below believed those expenses were properly allocated to the intervener defendants. Exactly. Right. So that if Mr. Farben prevails on his primary position, then we don't have anything further to say on the allocation. We didn't have to go back to the Supreme Court for you guys to argue it out. So this, Your Honor, was the point I was trying to make and I derailed myself off of it. The purpose of fee litigation is to not spawn an industry of fee litigation. This case has been going on and on. I think this court, based on the record, based on the Supreme Court record, based on the oral arguments of the Supreme Court, this court could simply, if it takes the more cramped view of Zipes, could simply shift those costs to the state without having to send it back below for further proceeding, although, yes, sending it back to further proceeding would be an option. I don't think it's necessary. With respect to Zipes itself, Your Honor, I think, as Judge Keenan said, the Supreme Court opinion in Zipes wouldn't make any sense if it was always the rule, 100% of the time, that interveners. What does it mean when they say we are doing a categorical rule? And the categorical rule is, they state it categorically, we conclude that district courts should similarly award title VII attorney's fees against losing interveners only when the intervener's action is frivolous, unreasonable, or without validation. It's a categorical rule they explain in the paragraph before. And then they say, then they go on to talk about the notion that there should only be a rule against wrongdoers, against blameless interveners should not pay. Defendants are committed no legal wrong, basically, is how they define that. The general policy that wrongdoers make a whole of those whom they have injured, where the title VII attorney works engaging in discriminatory practices is the policy that the court was after. So the question is, if it's a categorical rule, and they've set the boundaries of the category, that is, so long as the gate you have is, if the intervener's acted frivolously, unreasonably, without foundation, they're now creating a new wrong. But to intervene and support their interest, even if aligned with the defendant's, you can't enter relief against them and get them to pay the civil rights. They were interveners. They have an interest. But the wrongdoers, under the policy of Zipes, pay the attorney's fees, and under the policy of Congress, as they have excluded. Right. And this is where I think Judge Keenan sort of got to the crux of the issue, which is you have to answer the question, then, what does it mean to be a blameless intervener? Because if Your Honor — It's not even a question. They answered it about three or four times in that opinion. They explained the blameless intervener is the person who did not commit the civil right. Your Honor, with all due respect, there would have been no reason for the opinion to go on for an additional six or seven pages. Are you, then, Mr. Elias, relying on the language of 763, then, that says that the central purpose is to vindicate the national policy against wrongful discrimination by encouraging victims to make the wrongdoers pay it long? Correct. Correct, Your Honor. And my point to Judge Niemeyer is there wouldn't have been any reason for the court to then engage in that discussion if, in fact, this was just a categorical rule. The opinion just would have ended. But instead, the court goes through to talk about what a blameless intervener is and the policies that are behind it. And in the case — In other words, instead of applying a mechanical rule, they're explaining the policy that underlines a congressional policy that wrongdoers pay the fees. But, Your Honor, when you read there what their policy concerns are, in that case you had an intervener that, frankly, could have been a plaintiff. They weren't defending the — They don't. Their analysis on this is not based on that. Their analysis is based on the fact that an intervener is not a party against whom relief can be obtained. Your Honor, I would just disagree. I don't think you can read the — I think that this would have been an opinion that was shorter by three-quarters if this was a categorical rule, because there would have been no reason to talk about the role of unions in playing a representational interest. Well, what we commit to do is read the opinion again after we've tried. I didn't see your time. And I apologize. I wanted to apologize for going over. That's all right. Mr. Cox. Thank you, Your Honors. May it please the Court, Trevor Cox from the Attorney General's Office, this time on behalf of the members of the Virginia State Board of Elections. As you know, the defendants had a unique role in the litigation below and play a unique role on appeal in that we don't believe that we really have a dog in this fight. As you know, we defended alongside — Well, don't you have a — If the interveners are correct, then we have unaddressed $480,000 in fees. And two things can be done with that. One is the plaintiffs' fee order can be reduced by that amount. They just have to bear it. Or the amount can — and they would like to have it shifted to you as the prevailing party against you in the case. That's the risk that I guess you're trying to defend against. If that has a proposition on it, and I'm not sure we can do the allocation, I think the District Court would have to do that. But as a principle, you still probably should make an argument whether you should get hit with those fees. I'm prepared to make that argument. Let me show you why it would be inappropriate for this Court to enlarge the rights of plaintiffs on appeal who did not move for reconsideration below when we each got a separate fee award. And they didn't cross-appeal. Once it was clear that the interveners were going to appeal the fee award, they didn't cross-appeal to say, you know, by the way, the District Court should have made the defendants and interveners jointly liable. I think I heard Mr. Elias say that they never said in the District Court that they asked the Court to make a jointly liable award. But we cite in our brief four times. There are two briefs in support of the third motion for fees and the two briefs in support of their fourth motion for fees. There are headings. Defendants and intervener defendants are jointly liable for attorney's fees. That appears throughout all of those. In the reply in the third motion, it is clear that both defendants and interveners bear responsibility for plaintiff's fees on remand. But the Court did not hold us jointly liable, gave two separate fee awards. And, again, plaintiffs did not file a motion for reconsideration. They didn't cross-appeal that. So they've lost the ability to do that now. You can't enlarge the rights of an appellee who did not cross-appeal. You know, it's interesting. They say on page 16 of their brief, if the Court sides with interveners, plaintiffs will be entitled to a full award of $1.3 million against the state defendants. But then in Note 5, they say, the state defendants have already paid plaintiffs the portion of the award as to which they were held solely liable. So I'm not clear how, why they think we're solely liable for ours, but intervener defendants are not solely liable for theirs. So we don't think that we have a. . . In other words, on the one hand, you say they make separate awards assessing them against the state and assessing them against interveners. On the other hand, you say that the award assessed against the interveners is jointly assessed against you and the interveners. No, no. The two awards were separate. One was against us. We satisfied that obligation a long time ago. I was quoting from the plaintiff's brief where they suggested that interveners and defendants are still jointly liable, even though the award below was not framed that way. The plaintiff's position, not the court's position. That's correct. I'm sorry if that was unclear. They believe that we're still jointly liable, even though that was never ordered. And so it would be inappropriate for this court to enlarge the rights that they have, even if that were a remand to change it from a sole award against us just to make it a jointly liable award. So you're saying we lack authority to remand it to the district court to decide whether you should have to pay the difference? I mean, agreeing with you that it wasn't a board of joint several liabilities, if Mr. Carbon prevails today, you're saying that we don't have the authority to remand it to the district court? I would submit that because plaintiffs never tried to change a separate award for which interveners were solely responsible to a joint, to one that we were jointly responsible for. They never attempted to do that, even though they asked for it and the district court said no. They didn't move for reconsideration or move to amend the judgment, and they didn't cross appeal. Well, it would have to be a conditional appeal, wouldn't it, because at this point they consider themselves fully compensated. In other words, they have no award for all their fees. And if per chance the appellate court were to reduce that, then the open question is could they still get that from the state? I don't think they could, Your Honor. Well, you might be right. I don't know the answer. I'm raising that as an issue. I think that if they have an award against one party, an award against another party, and each party was supposed to bear those costs, how can on appeal, without it being an appealed issue, how can they say, you know what, we'd really like those awards to be joint and several awards? They asked for that relief below, they didn't get it, and they can't now ask it because they didn't appeal that issue. And so we don't think there's reason for a remand anyway because there's not really any factual development to do. They didn't deserve that right. That's right. They didn't move to amend the judgment, even though they had asked for that and that relief had been denied to them. I read you the four times where they said they should be held jointly liable. District court said no. Interveners are responsible for this chunk. Defendants are responsible for this chunk. And it was only interveners who said, you know what, we don't want to pay our chunk. How that translates into, oh, okay, if I can't get it from you, then you can get it from defendants. I mean, suppose if for some reason interveners weren't good for the money. I don't think they could claim, oh, you know what, we can't get it from them, we're going to have to get it from you, based on the language of the award. They were separate awards. So that's our position. We don't think the court can alter a judgment to benefit a non-appealing party. We cite a number of cases at page 28 and 29 of our brief. And so that's all our position boils down to in this appeal. We don't really feel like we have a dog in this fight, and that the scope of relief that plaintiffs had already gotten from us is not Thank you. Just a few quick points on what blamelessness means under Zipes. In addition to all the quotes that Judge Emeyer read that eliminated ambiguity, I would point out that the court below understood. If you look at joint appendix 142, it said that under Zipes, the quote, blamelessness of an intervener that did not violate any law and is not liable on the merits for which Right, but you know what I'm worried about, Mr. Carbon, is this cherry picking of language from Zipes. Because I can cherry pick a language that says that the whole purpose of the fee structure is to encourage victims to make the wrongdoers pay at law. I love that quote. Right. Wrongdoers. But the victims. Are you reading out victims? No. You said you were a victim. No, the victims have a right against the wrongdoers. Exactly. Wait a minute. Don't cut me off, please. Please, I apologize. Okay. So you're saying you're a victim under the Supreme Court's rationale. No, we're saying we're not wrongdoers. Right, but they're saying the purpose is to improve. That's why I'm asking whether Zipes actually is a clean fit for this case because the Supreme Court is talking about encouraging the victims to make the wrongdoers pay at law. Now, you say you're not a wrongdoer, but are you a victim? No. The victims are So we have innocent victims and we have interveners that didn't violate the law. You have two innocent parties. You revert to the American rule where they each pay their own fees. The only reason we change the rules is because these people have committed a wrong. They violated the Constitution. We didn't violate the Constitution. There was no injunction entered against us. The Supreme Court is seeming to contemplate a victim in their rationale. They do have victims. The plaintiffs need to make the wrongdoer, i.e., the law violator, pay. If the law violator is not available, then they don't get it against the intervener. In that case, the TWA was the wrongdoer, but it didn't have to pay, and so the district court was wrong in saying there was a defendant available for fees. I would point out that if you want to make the wrongdoer pay, they're sitting here at this table. The plaintiffs and defendants are arguing about whether or not the State should pay, but what you can't do is make somebody who was innocent and had no role in the Constitutional violation pay. That's the essential teaching of Zika. You're not concerned about whether the State pays or not. You're just saying you're not. I have no dog in that fight, to quote Mr. Cox. But I would point out that it's a very – I admit this is more of a policy, but you need to think about the consequences. Ninety-eight percent of the people who have intervened to defend shore districts or affirmative action plans are civil rights organizations. If the rule is that if the State stops defending, say, you had a Republican attorney general who didn't really like racial preferences, that means any time they intervene, their organization could go bankrupt because they defend what the State did. That will have a huge deterrent effect on all the points that Zipes made about how we want interveners in there because we want vigorous advocacy and we don't want the attorney general to have the unilateral ability to essentially veto a State law by refusing to defend it. And my final point on blamelessness is this Court has ruled on this. In Ohio River Valley it says quite clearly the union intervener in Zipes was blameless because there was no allegation that it violated Title VII. So every decision of this Court, every decision of the Supreme Court has made it clear that you're blameless unless you violated civil rights. All of these additional factors and one other exception is if you overstep your boundaries. Obviously. And if we unduly or frivolously prolong the litigation, then you could argue that we are not – we should pay the fees. Thank you, unless there are further questions. All right. Thank you. We'll adjourn tonight.
judges: Paul V. Niemeyer, William B. Traxler, Jr., Barbara Milano Keenan